UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA DEWEY,

                Petitioner,           Case No. 2:16-cv-13573
                                                  Hon. George Caram Steeh
v.

RANDALL HAAS,

                Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF
HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY,
AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

This is a habeas case filed by a Michigan prisoner under 28 U.S.C. § 2254. Petitioner Joshua Dewey was convicted after he pled guilty in the Livingston Circuit Court to assault on a prison employee, MICH. COMP. LAWS § 750.197(c), and assault with intent to maim, MICH. COMP. LAWS § 750.86. Petitioner was sentenced to concurrent terms of 20 to 40 years' imprisonment. The petition raises two claims: (1) the trial court erred in failing to allow Petitioner to withdraw his guilty plea, and (2) the trial court erred in scoring the sentencing guidelines.

The Court finds that petitioner's claims are without merit. Therefore, the petition will be denied. The Court will also deny a certificate of

appealability, and deny permission to proceed on appeal in forma pauperis.

## I. Background

The incident giving rise to this case occurred on January 21, 2013, at the Woodlawn Correctional Facility where petitioner was a prisoner. On that date, petitioner threw a chair at a corrections officer and then dug his thumb into the officer's eye socket. Petitioner admitted under oath at the plea hearing that he intended to pop out the officer's eye or blind him. Dkt. 8-2, at 27. The entire altercation was recorded by a security video camera. Dkt. 8-3, at 12.

After he was charged, the prosecutor moved to admit petitioner's prior criminal history under Michigan Rule of Evidence 404(b), which included eight prior felony convictions for assaulting a prison employee. A hearing was held on the motion, and after entertaining argument, the trial court stated that if petitioner's defense was that he did not intend to maim the officer, then evidence concerning the prior offenses would be allowed. Dkt. 8-2, at 12-14. A bench conference was then held off the record, and petitioner's counsel indicated that he had a discussion with his client, "and my client indicated to me that he wished to change his plea to a plea of guilty to an offer that the prosecutor had previously made at this settlement

conference." *Id*., at 15. Petitioner confirmed that this was a correct statement. *Id*.

Defense counsel then indicated that the offer was for petitioner to plead guilty to the two charged offenses, and in return the prosecutor would amend the habitual offender charge to reduce Petitioner's minimum sentence from 25 years to 20 years. *Id*., at 16. Petitioner indicated his understanding. *Id*. Defense counsel further stated that under the sentencing agreement petitioner's maximum term would be at least 30 years or higher. *Id*. Again, petitioner indicated his understanding. Id. Defense counsel also stated that petitioner's sentence would run consecutively to time he was already serving, and petitioner indicated his understanding and his desire to enter into the plea bargain. *Id*., at 17.

Petitioner was then placed under oath. *Id*., at 19. He indicated that he was 30 years old and had completed the eighth grade. *Id*., He indicated he could read and write. *Id*. Petitioner denied that he was under the influence of alcohol or any controlled substance. *Id*. When asked what he was pleading guilty to, petitioner stated, "I'm pleading guilty to count one, assault with intent to maim. . . . [and] count two, assault of prison employee." *Id*., at 19-20. He also acknowledged that he was charged with

being a fourth-time habitual felony offender, and that the maximum possible sentence was life. *Id.*

Petitioner indicated his understanding that his plea of guilty had the same effect as a conviction after a trial. *Id.*, at 20. He indicated his understanding that his sentence would run consecutively to his present sentence. *Id.*, at 21. Petitioner indicated his understanding of the nature of the charges against him, and he expressed satisfaction in his counsel's representation. *Id.*, at 22.

Petitioner was then advised of, and agreed to waive, each of his trial rights. *Id.*, at 22-23. Petitioner also read and signed a written advice of rights form. *Id.*, at 24. Petitioner indicated that he was pleading guilty because he really was guilty. *Id.* He agreed that it was his own choice to enter his plea. *Id.*

Petitioner testified that on January 21, 2013, when he was a prisoner at the Woodlawn Correctional Facility he intentionally threw a plastic chair at a corrections officer, and then when the officer attempted to place him into custody he "reached up and put [his] finger into his eye and [he] gouged at his eye with an intent . . . to blind him or pop an eye . . . to gouge an eye out." *Id.* 24-27. Petitioner stated that he understood that gouging

someone's eye out would be a maiming or disfiguring injury. *Id.*, at 27.

The Court again asked petitioner if he was offering his plea voluntarily, and petitioner indicated that he was. *Id.*, at 28-29. Petitioner stated he understood that by pleading guilty he was giving up any claim that the plea was the result of promises or threats that were not disclosed to the Court during the plea hearing. *Id.*, at 29. Petitioner stated that everything he stated during the plea hearing was true and accurate. *Id.*, at 30. The Court then found that petitioner's guilty plea was entered freely, voluntarily, understandingly, knowingly, and accurately. *Id.*, at 30-31. Petitioner acknowledged that he was "not going to be able to withdraw from this plea as long as the Judge goes along with the sentencing agreement." *Id.*, at 34.

At the sentencing hearing, petitioner indicated his desire to withdraw his guilty plea. Dkt. 8-3, at 7. He indicated that he had a history of PTSD from childhood, and that when the offense occurred he had a flashback of being traumatized by his father. *Id.* He indicated that the only reason he entered his plea was "because I was feeling threatened by the way the prosecutor was conducting herself, and the only reason I didn't act out is because I was scared by how many officers were in the courtroom. Also

another reason I want to withdraw my plea is because at the time of the alleged offense my psychotropic medicines were being adjusted and my treating psychiatrist . . . was trying to stabilize me on my medicine." *Id.*, at 7-8. Petitioner also asserted that he was unstable in his thoughts and emotions. *Id.*, at 8.

Petitioner asserted that before leaving the facility for the plea hearing, "the MDOC transportation told me, 'If you don't plead guilty, I'll activate the taser cuff.' . . . I was scared that I might die if she did this because I never had dealt with one of these in the past." *Id*. The trial court denied the motion, finding that it presided over the plea hearing, and in the court's judgment the plea was entered knowingly, voluntarily, and understandingly. *Id.*, at 8-9. In scoring the sentencing guidelines, petitioner was scored 50 points over defense counsel's objection for Offense Variable 7 for sadism. *Id.*, at 11-13. Petitioner was then sentenced under the terms of the plea agreement to two concurrent terms of 20 to 40 years. *Id.*, at 18.

Following his conviction and sentence petitioner filed an application for leave to appeal in the Michigan Court of Appeals, raising what now form his two habeas claims. The Michigan Court of Appeals denied the application for "lack of merit in the grounds presented." *People v. Dewey*,

No. 326116 (Mich. Ct. App. Apr. 13, 2015). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Dewey*, 870 N.W.2d 696 (Mich. 2015)(Table).

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court adjudication is "contrary to" Supreme Court precedent under § 2254(d)(1) "if the state court applies a rule that contradicts the

governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result]." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (internal quotation marks omitted).

> Under the "unreasonable application" clause of § 2254(d)(1), even clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*White v. Woodall*, ___ U.S. ___, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698 (2014) (citations, quotation marks, and alterations omitted).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, ___ U.S. ___, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015). "Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). "[W]hether the trial

judge was right or wrong is not the pertinent question under AEDPA." *Renico v. Lett*, 559 U.S. 766, 778 n.3 (2010). The question is whether the state court's application of federal law was "objectively unreasonable." *White*, 134 S. Ct. at 1702. In short, the standard for obtaining federal habeas relief is "difficult to meet . . . because it was meant to be." *Burt v. Titlow*, ___ U.S. ___, 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013)(internal quotation marks omitted).

### III. Analysis

**A. Plea Withdrawal**

Petitioner first asserts that the trial court erred in failing to allow him to withdraw his plea prior to sentencing. He argues that he had undergone a change in psychotropic medication, that he was threatened by the transportation officer, that the number of correctional officers in attendance was intimidating, and that the manner the prosecutor conducted herself at the pretrial hearing felt threatening as well.

The AEDPA deferential standard of review applies to this claim because the Michigan Court of Appeals rejected petitioner's application for leave to appeal "for lack of merit in the grounds presented." This decision amounted to a decision on the merits. See *Werth v. Bell*, 692 F. 3d 486,

492-94 (6th Cir. 2012).

At the outset, petitioner has no federal constitutional right or absolute right under state law to withdraw his guilty plea. See *Adams v. Burt*, 471 F. Supp. 2d 835, 843 (E.D. Mich. 2007). Therefore, unless the plea violated a clearly established constitutional right, whether to allow the withdrawal of a criminal defendant's guilty plea is within the state trial court's discretion. See *id.*; see also *Hoffman v. Jones*, 159 F. Supp. 2d 648, 655 (E.D. Mich. 2001). The only question on collateral review of a guilty plea is whether the plea was voluntary, knowing, and intelligent. *United States v. Broce*, 488 U.S. 563, 569 (1989); *Bousley v. United States*, 523 U.S. 614, 618 (1998). A guilty plea is voluntary if the accused understands the nature of the charges against him and the constitutional protections that he is waiving. *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976). A plea is knowing and intelligent if it is done "with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he or she is pleading guilty. *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994), cert. denied, 512 U.S. 1222 (1994).

When a petitioner brings a federal habeas petition challenging his plea of guilty, the state generally satisfies its burden by producing a transcript of the state-court proceedings showing that the plea was made voluntarily. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. *Id*. The petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. *Id*. at 328. It is only when the consensual character of a guilty plea is called into question that the validity of a guilty plea may be impaired. *Mabry v. Johnson*, 467 U.S. 504, 508-509 (1984). "A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his or her own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (i.e. bribes)." *Myers*, 159 F. Supp. 2d at 626-627 (citing *Mabry*, 467 U.S. at 509).

In the present case, the record establishes that petitioner knowingly

and voluntarily entered his guilty plea. Petitioner was advised of the maximum penalties of the crimes that he was pleading to, as well as the rights that he would be giving up by pleading guilty. The terms of the plea agreement were placed on the record, including the sentencing agreement. Petitioner acknowledged several times that he was pleading guilty freely and voluntarily and that no threats had been made to get him to plead guilty. He also read and signed a written notice of rights form. Petitioner readily admitted to assaulting the corrections officer, and he never indicated that he felt threatened or intimidated by outside forces prior to entering his guilty plea.

    Petitioner's claim that the change in medications clouded his judgment is contradicted by his sworn testimony that he was not under the influence of a controlled substance at the time of his plea, and it is also contradicted by the record of his appropriate, lucid, and responsive statements during the plea colloquy. Petitioner's claims that he was intimidated by the transportation officer, the number of officers in the courtroom, and the prosecutor's conduct is likewise contradicted by his sworn testimony that he was entering his plea of his own free will and that he was not threatened into entering his plea. Petitioner's claims that he

was coerced into pleading guilty by these outside factors is insufficient to overcome the presumption of verity which attaches to petitioner's sworn testimony to the contrary during the plea colloquy. *See Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 750-751 (E.D. Mich. 2005). Petitioner has therefore failed to show that the state court adjudication of his first claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court law.

**B. Sentencing Guidelines**

Petitioner next claims that the trial court incorrectly scored the sentencing guidelines. Specifically, he assets that it was error for the trial court to score him fifty points for treating the victim with sadism, torture, or excessive brutality when the factual basis for the plea indicated that petitioner merely reached for the officer's eye, and it was not a prolonged or repeated attack.

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1 (2010) (quoting 28 U.S.C. § 2254(a)). Federal courts have no power to intervene on the basis of a perceived error of state law. *Bradshaw v. Richey*, 546

U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. See *Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

An exception exists if a sentence is based upon material "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980); *Townsend v. Burke*, 334 U.S. 736, 741 (1948). But to prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *See United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988)). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *United States*

*v. Tucker*, 404 U.S. 443, 447(1972).

Petitioner states that the court relied upon false information by finding that the crime involved sadism, torture, or excessive brutality. In fact, however, Petitioner's dispute is not with the facts relied upon by the trial court, which were not in dispute, but with whether those facts amounted to sadism, torture, or excessive brutality as defined by the state sentencing guidelines. Petitioner fails to identify any false information that formed the basis for the trial court's determination that points be scored for the offense variable in light of the nature of the crime. Thus, petitioner's challenge is more accurately characterized as an objection to application of the Michigan sentencing guidelines, and such a challenge is not cognizable on habeas review. See *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007); *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); see also *Kissner v. Palmer*, 826 F. 3d 898, 904 (6th Cir. 2016) (stating that errors in the application of state sentencing guidelines "cannot independently support habeas relief").

As none of Petitioner's claims merit relief, the petition will be denied.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009, requires that a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11, Rules Governing Section 2254 Proceedings. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."

*Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted). Here, jurists of reason would not debate the Court's conclusion that Petitioner has not met the standard for a certificate of appealability because his claims are completely devoid of merit. Therefore, the Court denies a certificate of appealability.

The Court will also deny permission to appeal in forma pauperis because any appeal of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

### V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

Dated: June 13, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on June 13, 2017, by electronic and/or ordinary mail and also on Joshua Dewey #379204, Macomb Correctional Facility, 34625 26 Mile Road, New Haven, MI 48048.

s/Barbara Radke
Deputy Clerk